José J. Figueroa, et al., Plaintiffs and Appellees, v. Benjamín Guerra Mondragón, et al., Defendants and Appellants.

No. 9728. Argued December 3, 1948.—Decided February 24, 1949.

*Ismael Soldevila* for appellants. *Guillermo S. Pierluisi* for appellees. ·

MR. JUSTICE SNYDER delivered the opinion of the Court.

The plaintiffs own a lot, twenty meters in front and fifty meters deep, which fronts on Ponce de León Avenue at Stop 5 in Puerta de Tierra, San Juan, and runs back to San Agustín Street. The plaintiffs purchased this lot from Murray Orinstein in 1946, who had purchased it from the Episcopal Church, which had used it for many' years. A dilapidated church which was no longer in use stood for many years on the property.

A number of years ago, when it occupied the building, 'the Church erected a wire fence. Thereafter, sometime between 1920 and 1922, the Church built a six foot concrete wall at the same location. The fence and· wall were not on the boundary line of the property. Instead, the fence and wall were constructed within the property of the Church. As a result, a part of the lot which belonged to the Church —a strip of land 2.70 meters in front and 50 meters deep, running from Ponce de León Avenue to San Agustín Street— remained outside the fence and wall.

The defendants own the adjacent property, which is also twenty meters in front and 50 meters deep, and also runs from Ponce de León Avenue to San Agustín Street. Some old houses are located thereon and it is known as "El Laberinto". The fence and wall were constructed by the Church because of the undesirable activities of the people who lived in "El Laberinto". Although it belonged to the Church and now belongs to the plaintiffs, the 2.70 strip has been used for a number of years by the occupants of the houses in "El Laberinto", and by some members of the public, as an alley leading to San Agustín Street and Ponce de León Avenue.

This suit originated as an action for a survey brought by the plaintiffs, but at the suggestion of the trial court was converted into an action for denial of servitude on the 2.70

meter strip of land as well as for a survey. After a trial on the merits, the district court entered a judgment which granted the petition for a survey and also provided that (1) no servitude of right of way exists in favor of the defendants' lot against the plaintiffs' land; (2) the 2.70 meter strip has not been dedicated to public use; (3) no easement of light and view exists in favor of the defendants' tract against the plaintiffs' property; and (4) the defendants' lot has acquired by prescription an easement to maintain and conserve those balconies and stairways or parts thereof which the survey may show exist on the land or space above the plaintiffs' lot. The case is here on appeal by the defendants.

The defendants assign as an error the holding of the lower court that no easement of right of way existed in favor of defendants' tract as the dominant tenement over the plaintiffs' lot as the servient tenement. The defendants contend that they have such a right of way based on use from time immemorial.

■■ A private right of way may be acquired only by virtue of a document of title and not by prescription. Section 475, Civil Code, 1930 ed.; *Cabanillas* v. *Gelpí*, 65 P.R.R. 890, 891, and cases cited therein. But prior to 1889, when the Civil Code took effect, such a servitude could be acquired by use from time immemorial under Partida III, tit. 31, law 15. Consequently, if the use began prior to 1889, Partida III, tit. 31, law 15 applies, and a right of way may be acquired by prescription, despite the fact that when the Code became effective in 1889, the servitude in question had not yet been "consolidated by immemorial prescription". *Cabanillas* v. *Gelpí, supra*, p. 891.

■ However, it is not sufficient simply to prove use prior to 1889. Nor is it enough to prove that use for many years. The testimony must show not only ancient usage, but that no one remembers when the use began. The use must be

from time immemorial; that is, during so long a time that "the memory of man runneth not to the contrary". *Cabanillas* v. *Gelpí, supra,* 893; *Stella* v. *Blasini,* 61 P.R.R. 360, 370.

We agree with the district court that the evidence of the defendants did not meet the requirement of use from time immemorial. Three old men testified to the use of the alley for ingress to and egress from "El Laberinto". But they all testified with substantial accuracy as to the exact date when such use began. Since the witnesses remembered the time when the use began, their testimony did not establish use from time immemorial.

■ Another error is directed against the holding of the lower court that no right of way existed in favor of the general public because of dedication to public use.

This Court has never determined if the common law rule of dedication to public use applies in this jurisdiction in all its breadth and scope. Our statutory law makes only two indirect references to dedication. See § 65 (4) of The Municipal Law, Laws of Puerto Rico, 1906; § 464, par. 37, Code of Civil Procedure, 1933 ed.[1] And, generally speaking, the rule in this jurisdiction is that interests in land are created by instruments of title. In continental United States dedication to public use may be predicated on an express grant. Cf. *Municipality of Río Piedras* v. *Río Piedras Development Co., Inc., ante,* p. 557. But we are asked in this case to find that, despite the lack of an express grant,

---

[1] Section 65 provides that the municipal council of a Municipality is authorized: "(4) To cause to be recorded as municipal roads in the office of the Commissioner of the Interior, all highways which have become such by usage, dedication, abandonment to the public, or by any other means provided by law, and the preparing and recording of proper deeds relating thereto;"

Section 464, in establishing rebuttal presumptions in the law of evidence, recites the following: "37. The uninterrupted use by the public of land for a burial ground, for five years, with the consent of the owner and without a reservation of his rights, is presumptive evidence of his intention to dedicate it to the public for that purpose."

there was an implied dedication of land to public use by acts and conduct of the owner on the basis of estoppel *in pais*. However, implied dedication is a doctrine which must be invoked cautiously in this jurisdiction, where even private rights of way, except where prescription based on use since time immemorial began to run prior to 1889, may be created under § 475 of the Civil Code only by deed.

This Court has decided two cases in which the common law rule of implied dedication based on estoppel *in pais* has been adopted to a limited extent in this jurisdiction. *Municipality of Vega Baja v. Smith*, 27 P.R.R. 582; *Capella v. Carreras*, 48 P.R.R. 811.[2] The *Capella* case involved a special situation. There a lot was acquired which formed part of an urbanization which had been laid out pursuant to a plan by lots, blocks and streets. Obviously, under such circumstances, a lot owner may not deny adjacent property owners and the public in general the right to use streets laid out on the plan for the benefits of all the lots. The cases on which we relied in the *Capella* case all involve similar plats or plans. Cf. Annotation, 172 A.L.R. 167.

In the *Smith* case there was no holding that dedication had been actually proved. We held only that the complaint stated a cause of action. We therefore reversed a judgment on a demurrer and remanded the case for trial. And we used the following significant language at pp. 593–4:

"Here, plaintiff, a municipality, not an adjoining landowner, sets up the existence of a public road used, not with the mere consent of respondent as a convenient means of ingress and egress to and from properties on either side of the land belonging to respondent, but as a neighborhood road belonging to the municipality, duly recorded as such, respected by the predecessors in interest of respondent and forming the connecting link

---

[2] Although the contention that a right of way had been dedicated to public use was made in *Stella v. Blasini*, 61 P.R.R. 360, in that case we discussed only the problem of whether or not a private right of way existed by virtue of use from time immemorial. Cf. *Ramos v. Mayagüez Shipping Terminal*, 52 P.R.R. 216, 221.

between two public roads, one of them an insular highway. The evidence to be adduced at the trial may show that the alleged road is not in fact a neighborhood road but a mere private right of way; that the predecessors in interest of respondent did not respect it as a public road, but have merely tolerated the occasional or more or less habitual crossing of their property by a few of their neighbors. But to respect a public road as such implies something more than mere passive acquiescence in travel across private property. . ."

In the instant case no Municipality is asserting the existence of a public road. The defendants are adjacent property owners who are primarily interested in a private right of way over an alley, not a road. The alley has been used principally by the twenty or thirty families which occupy the houses in "El Laberinto". It is true there was testimony that the alley was also used as a matter of convenience by some members of the general public in that neighborhood to go from Ponce de León Avenue and San Agustín Street and vice versa. But there are public streets which have always been close by and which are just as convenient for this same purpose. And, although the opinion of the lower court is not so clear as it might be on this point, it apparently concluded that there was mere tolerance or passive acquiescence by the Church in connection with the use of the 2.70 meter strip as an alley by some members of the general public. But, as the above quotation from the *Smith* case points out, tolerance of such use is not enough. For implied dedication to exist, it must unmistakably appear that there was a specific intent on the part of the owner to dedicate his land to public use. *Summerville* v. *Duke Power Co.*, 115 F. (2) 440 (C.C.A. 4, 1940) ; *Simmons* v. *Perkins*, 118 P. (2) 740 (Idaho, 1941) ; *Parker* v. *Fuller*, 28 So. (2) 207 (Ala., 1946) ; *Lyons* v. *Schwartz*, 104 P. (2) 383 (Calif., 1940) ; *Mulik* v. *Jorganian*, 37 S.W. (2) 963 (Mo., 1931) ; 4 McQuillin, Municipal Corporations Revised Ed., p. 727, *et seq.;* Burby on Real Property, pp. 362–3; XIII Tulane L.

Rev. 606, 607. Cf. *Muñoz* v. *Porto Rico Ry., Light & Power Co.*, 74 F. (2) 816, 820–21 (C.C.A. 1, 1934).[3] Moreover, the cases indicate that it is more difficult to spell out such an intent to dedicate a narrow alley as in this case than in the case of highways. Annotation, 58 A.L.R. 239. In the absence of such an intent on the part of the Church to dedicate the 2.70 meter strip of land to public use, we conclude that the district court did not err in holding that it had not been so dedicated.[4]

---

[3] Although he was discussing a private right of way in a rural area, Chief Justice del Toro, speaking for the Court in *Del Moral* v. *Muratti*, 34 P.R.R. 244, used language which is also pertinent here. He said at p. 249:

"It is clear that the road which was being used was more convenient. The use of roads by tolerance is a matter of frequent occurrence in the rural districts of Porto Rico. Flooded rivers and streams, bad condition of certain country roads, short cuts, friendship, establishing of schools and stores at given places, fear of provoking controversies or unfriendliness, desire to favor neighbors by making distance shorter and travel easier, and many other circumstances can be pointed to as causes for this condition. No doubt a similar situation and the idea of fixing and making certain something which is a privilege of great importance for one and an encumbrance of no less importance for the other were the causes that prompted the Spanish legislators to modify the law and the Portorican Legislature to let the modification stand. Hence, travel which is merely tolerated generally continues until there is abuse, as the evidence showed there was in this case. Therefore, when one seeks to obtain an absolute and permanent right he knows that he must enter into a contract in order to acquire the right for an appropriate consideration, and the right so acquired can be secured as against third persons by recording it according to the provisions of the Mortgage Law. After 1890 the indefinite and vague conditions concerning this kind of a servitude disappeared in Porto Rico."

[4] If we had held that this alley is a public passageway, serious problems would arise. For example, there are cases holding that land dedicated to public use does not belong to the public. The donor retains title. The public only has an easement of use, and possession reverts to the donor if the particular public use is abandoned. Cf. *Municipality of Río Piedras* v. *Río Piedras Development Co., Inc., supra*, footnote 2. If we adopted the rule laid down in those cases, who would be responsible for maintenance of the passageway and for injuries for failure to maintain it? Cf. Annotation, 126 A.L.R. 443. In addition, the planning of public streets and roads would be seriously handicapped if action of *private* parties resulted as a matter of law in creating *public* roads or streets which do not comply with present standards.

■■ Finally, the defendants assign as an error the denial of servitudes of (1) light and direct view by means of doors and windows that open and project outward; (2) roofs or projections; and (3) receiving water discharged from roofs.

As to (1), the prescriptive period for acquisition of such a servitude begins to run from the date of an obstructive act by the owner of the dominant tenement. *Balzac* v. *Torres*, 68 P.R.R. 908, and cases cited. And here, as the lower court pointed out, no such obstructive act occurred.

As to (2) and (3), as already noted, this case originated as an action for a survey. At the trial, at the suggestion of the court, the parties proceeded to litigate in addition the issue of a right of way. But there is nothing in the record indicating that the defendants at any time, either in the pleadings or by testimony, contended in the district court that the plaintiffs' lot was subject to the servitudes involved in (2) and (3). We therefore see no basis on which the defendants may make this contention for the first time on appeal.

The judgment of the district court will be affirmed.

Mr. Justice Negrón Fernández did not participate herein.